# In the United States Court of Federal Claims

No. 23-103C
(Filed:  September 28, 2023)

```
*************************************
                                    *
COREY L. SANDERS,                   *
                                    *
                    Plaintiff,      *
                                    *
        v.                          *
                                    *
THE UNITED STATES,                  *
                                    *
                    Defendant.      *
                                    *
*************************************
```

## OPINION AND ORDER

Plaintiff Corey L. Sanders filed a Complaint seeking review of the decisions of the Army Board for Correction of Military Records ("ABCMR") and the Army Discharge Review Board ("ADRB"), both of which denied his application for correction of his military records.  *See generally* Compl.  Plaintiff alleges the Army improperly discharged him in 2003 by giving him a discharge document which he did not sign.  He further contends that the Army has subsequently erred by failing to: (1) correct his military records, (2) retroactively promote him and provide associated backpay, (3) provide his family legal assistance and transition benefits upon his discharge, and (4) award disability retirement based on Post-Traumatic Stress Disorder ("PTSD")/antisocial personality disorder.

The Government now moves the Court, pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the United States Court of Federal Claims ("RCFC"), to dismiss Plaintiff's entire Complaint.  The Government argues that Plaintiff's claims for improper discharge, correction of military records, retroactive promotion and associated backpay should be dismissed for lack of subject matter jurisdiction on the grounds that Plaintiff's claims are time barred.  Additionally, the Government asserts Plaintiff's claim for legal assistance and transition benefits should be dismissed because Plaintiff's Complaint fails to identify a money-mandating statute demonstrating that this Court possesses jurisdiction to entertain his claim.  Finally, the Government argues that Plaintiff's remaining claim for disability retirement should be dismissed for failure to state a claim.

The Government alternatively asserts that the Government is entitled to judgment on the administrative record.  Because the Court dismisses Plaintiff's Complaint pursuant to Rules 12(b)(1) and 12(b)(6), it is unnecessary for the Court to address this additional

argument.  Plaintiff's cross motion reiterates the allegations made in Plaintiff's Complaint and seeks declaratory judgment.  The motions are fully briefed.

For the reasons set forth below, the Government's Motion to Dismiss is hereby **GRANTED.**  Because the Court dismisses Plaintiff's Complaint, Plaintiff's Cross Motion is **DENIED.**  Additionally, Plaintiff's pending motions are dismissed simultaneously as moot.[1]

## I.     Facts and Background

### A.  Service Record

#### 1.  Plaintiff was determined qualified for service at enlistment.

On March 18, 2002, Plaintiff enlisted in the Army Reserve, Delayed Entry Program.  AR 321.[2]  Prior to joining the Army, Plaintiff submitted a Report of Medical History.  AR 325-29.  Plaintiff's Report of Medical Examination lists "111111" for his Physical Profile, indicating no psychological impairment.  AR 352.  On March 18, 2002, he was examined by a physician to determine whether he was medically fit for military service.  AR 350-52.  The medical provider conducted a clinical evaluation and marked "Normal" for all items on a checklist of medical conditions, including the line marked "Psychiatric."  AR350.  The medical provider noted no significant or disqualifying medical conditions or diagnoses in the medical examination report.  AR 352.  The report of the medical examination, dated March 18, 2002, shows that at the time of enlistment, Plaintiff was determined qualified for service.  AR 133.

When completing his pre-enlistment medical review, Plaintiff certified that he had not concealed any medical information from his recruiter.  AR 331.  Additionally, Plaintiff completed a background form SF 86.  AR 341.  In his form he stated that he had not consulted with a mental health professional or a health care provider about a mental health-related condition in the last seven years.  *Id.*

#### 2.  Plaintiff is separated for misconduct.

On April 2, 2002, Plaintiff enlisted in the active Army for a contract period of three years.  AR 321.  After completing initial training, Plaintiff was stationed in Germany.  After a bout of misconduct, he was separated from the Army on February 25, 2003, while stationed in Friedberg, Germany and was issued a general discharge under

---

[1] Plaintiff's pending motions include the following: Motion for Interrogatory, ECF No. 32, Motion for Declaratory Judgment, ECF No. 26, Motion to Compel, ECF No. 37, and Motion for Appointment of Counsel, ECF No. 36.

[2] "AR" refers to pages from the administrative record.  ECF No. 21.

honorable conditions.[3]  AR 247.  Some of his misconduct included being absent without leave, disrespecting a noncommissioned officer, and willfully disobeying lawful orders. AR 354.

Before being discharged, Plaintiff was notified of the reasons for his separation and was given an opportunity to meet with a military attorney and submit any matters he wanted considered before being separated.  AR 360.  He met with his attorney and his attorney advised him of the basis of the contemplated separation and its effects, and the rights available to him.  AR 362.  Plaintiff did not submit a statement.  AR 360.

On December 3, 2002, again before his discharge, Plaintiff underwent a command referred mental health evaluation.[4]  AR 134.  Plaintiff's mental status was determined to be within normal limits, and he was medically cleared for discharge.  AR 411.  On February 25, 2003, Plaintiff was discharged, after completing 10 months and 24 days of active military service.  AR 418.

At discharge Plaintiff was issued a Discharge Document ("DD") Form 214 showing that he was discharged on February 25, 2003, in Giessen, Germany.  AR 159, 412.  Under block "21" "Signature of Member Being Separated," it noted "Soldier Not Available For Signature."  AR 412.  The DD Form 214 annotated Plaintiff's discharge was for misconduct with a character of service of under honorable conditions (general) and he was provided a reentry code of 3.[5]  AR 412.

### B.  Plaintiff's Appeals

Plaintiff appealed his discharge to several agencies within the Army including: two applications to the ADRB, one complaint to the Joint Service Review Activity, one application to the ABCMR, a request to the ABCMR for reconsideration, and a *sua*

---

[3] Soldiers who commit misconduct involving either discreditable involvement with civil or military authorities or discreditable conduct and conduct prejudicial to good order and discipline can be separated prior to the expiration of their term of service for patterns of misconduct under Army Reg. 635-200, (Personnel Separations Enlisted Personnel), ¶ 14-12*b* (2000).  Soldiers separated for misconduct can receive one of three characterizations of service: (1) honorable, (2) general (under honorable conditions), and (3) other than honorable conditions.  *Id.* ¶ 3-4*a*(1).

[4] It is unclear whether Plaintiff also underwent a physical examination at that time but the record states that the "applicant did meet medical retention standards in accordance with AR 40-501, chapter 3, and following the provisions set forth in AR 635-40 (Physical Evaluation for Retention, Retirement, or Separation).  AR 134.

[5] It is unclear to the Court why Plaintiff did not sign the separation papers.  But because Plaintiff's claims challenging his discharge are time-barred, as explained below, this issue is immaterial.

*sponte* ADRB reconsideration. Each agency appeal and resulting decision is described in detail below.

### 1. ADRB denies Plaintiff's applications.

The ADRB is authorized to review the character, reason, and authority of a discharge of any service member discharged from active military service within the past 15 years. The board was established under 10 U.S.C. § 1553. *See* 32 C.F.R. § 581.2 (containing the implementing regulations for 10 U.S.C. § 1553).

In August 2003, Plaintiff filed applications with the ADRB, requesting his Reentry ("RE") Code on his DD Form 214 be changed from a "3" to a "1" so that he could "rejoin [his] unit." AR 317-18. An RE code of "3" only authorizes a reenlistment of the discharged soldier if he is granted a waiver and a code of "1" indicated he would be fully qualified.[6] *Id.*

The ADRB considered Plaintiff's request but unanimously denied it because Plaintiff had not shown any injustice or procedural errors in his separation. AR 420-22. On June 4, 2004, the ADRB determined that his RE code was warranted, proper, and equitable given his pattern of misconduct. AR 420-22.

In March 2015, Plaintiff filed a second application with the ADRB, requesting an upgrade to an honorable discharge and a change in his narrative reason for separation to "service-connected disability." AR 243-45. In his application, Plaintiff states that his request for an upgrade to his discharge was justified because he claimed he had a "[p]re-existing mental health disorder aggravated in military and was discharged without treatment and disability progressed until [I] started having legal problems (convictions)." AR 243. In correspondence with the ADRB, Plaintiff notes the Veteran's Affairs ("VA") had not rated him and he "did not receive any kind of treatment from military." AR 246. The ADRB considered his childhood mental health diagnoses of (Axis I) Adjustment-Disorder with Depressed Mood, Conduct Disorder, (Axis I) Intermittent Explosive Disorder, Oppositional Defiant Disorder, and Attention Deficit/Hyperactivity Disorder. AR 237.

The ADRB denied relief on September 9, 2015. AR 234. The ADRB concluded that there was no evidence that any pre-existing mental health disorder contributed to his general discharge and "there was no evidence to indicate a problem that would have rendered the applicant disqualified for further military service with either medical limitation." AR 239. The ADRB found the discharge was consistent with the procedural

---

[6] Army Regulation 601-210 (Active and Reserve Components Enlistment Program) (1995) covers eligibility criteria, policies, and procedures for enlistment and processing into the Regular Army, U.S. Army Reserve, and Army National Guard. Table 3-1 (U.S. Army Reentry Eligibility Codes) includes a list of RE codes.

and substantive requirements of the regulation, within the discretion of the separation authority, and that the Army provided Plaintiff with full administrative due process.[7]  *Id.*

In August 2021, pursuant to a November 2020 settlement agreement in a class action lawsuit, *Kennedy v. McCarthy*, No. 16-2010 (D. Conn.), the ADRB volunteered to reconsider Plaintiff's application for a change in the characterization of service and a change to the narrative reason for his discharge, assistance with relocating Plaintiff's children, backpay, and retirement.  AR 4-15, 30.  The ADRB's medical advisor reviewed Plaintiff's Department of Defense and VA health records and found that Plaintiff "has the following potentially mitigating diagnoses/experiences: Adjustment Disorder (AD), Anxiety, and Major Depressive Disorder (MDD)."  AR 10.  However, the medical advisor found these conditions did not exist during military service and that Plaintiff had provided no evidence that military service exacerbated any behavioral health condition. *Id.*  On May 11, 2023, the ADRB determined that Plaintiff's discharge and discharge characterization was proper and equitable, because his "misconduct fell below that level of meritorious service warranted for an upgrade to Honorable discharge."  AR 4, 10-11.

## 2.  Plaintiff's JSRA complaint is dismissed.

In 2015, Plaintiff submitted correspondence to the Army, contending that his ADRB decisional document was unresponsive to his pre-existing mental health disorder. Specifically, he alleged that the document contained inaccurate information about his overseas service and recognitions, and that his discharge was invalid because he did not receive separation orders, separation pay, or a discharge physical. AR231-33.  In January 2016, the ADRB forwarded this correspondence to the Joint Service Review Activity ("JSRA").  AR 229.

The JSRA is a three-member board "consisting of one judge advocate from each Military Department" which advises the Deputy Assistant Secretary of Defense (Military Personnel and Force Management), DASD (MP&FM), with complaints concerning the ADRB's decisions.  32 CFR § 70.10.  The DASD (MP&FM) is the final authority with respect to action on such correspondence.  *Id.*

As a result of what was construed as Plaintiff's JSRA complaint, the JSRA requested that the ADRB review the complaint and take any appropriate action.  AR 192. Pursuant to this request, the ADRB provided an amended decisional document and partially granted Plaintiff's complaint.  AR 191-93, 161.  First, the ADRB's medical officer determined that Plaintiff appeared to have an undiagnosed anxiety disorder not

_____

[7] After Plaintiff submitted his request to the ADRB, the Human Resources Command (HRC) Awards and Decorations Branch reviewed his military records and determined Plaintiff's entitlement to the Global War on Terrorism Service Medal, which was authorized for individuals who served on active duty during a designated anti-terrorism operation.  AR 161.  His DD Form 214 was amended to add the award of the Global War on Terrorism Service Medal.  AR 161, 425.

otherwise specified that existed prior to service and may have been exacerbated by military service.  AR 192.  The ADRB's medical officer determined that this condition may have been a mitigating factor in the misconduct that led to his discharge.  *Id.*  However, based on the evidentiary record, the ADRB concluded that Plaintiff's mental health condition was insufficient to mitigate the severity of his misconduct.  *Id.*  Second, the ADRB agreed with Plaintiff that the previous decisional document did not correctly reflect his overseas service or his Global War on Terrorism Service Ribbon.  *Id.*  The ADRB did not respond to Plaintiff's complaint that his discharge was invalid because Plaintiff did not first present it to the ADRB for consideration.  *Id.*

Based on its review of Plaintiff's JSRA complaint, in May 2016, the JSRA determined that the ADRB decisional document complied with applicable policies and regulations and recommended that the designated decisional authority deny the complaint and close the case.  AR 193, 161.

### 3.  ABCMR denies Plaintiff's application.

The ABCMR was established by the Secretary of the Army under 10 U.S.C. § 1552 to make corrections to military records whenever the Secretary deems it necessary to remove an "error" or "injustice."  *See* 32 C.F.R. § 581.3 (containing the implementing regulations for 10 U.S.C. § 1552).  ABCMR review is the highest level of administrative review within the Department of the Army, and the ABCMR will only consider cases after an applicant has exhausted all other administrative remedies.  *See* 32 C.F.R. § 581.3(d)(3).

In March 2016, Plaintiff applied to the ABCMR, requesting the same relief he had requested from the ADRB, among other claims.  AR 194-205.  In support of his multiple DD Form 149 requests, Plaintiff stated that he was misdiagnosed in early childhood as being bipolar as a result of his traumatic childhood experiences, he was treated with unnecessary anti-psychotic medications that caused him serious physical ailments, and he was an orphan and was institutionalized until approximately eight months before he joined the Army.  AR 204.  He also claimed that the Army stranded him in Germany, German authorities deported his daughter from Germany, and he never signed his DD Form 214.  AR 205.

The medical advisor determined that at no point, based on available records, did Plaintiff "reach a Medical Retention Decision Point."  AR 182.  The advisory opinion stated that while Plaintiff may have met criteria for conduct disorder as a child, there was insufficient evidence that a behavioral health condition mitigated Plaintiff's misconduct or had any bearing on the discharge characterization.  AR 182.  The medical advisor found no causal nexus between mental health considerations and Plaintiff's misconduct, and there was no support for the idea that referral to a medical evaluation board was indicated at any time during Plaintiff's service.  AR 182.  The ABCMR provided Plaintiff the advisory opinion on August 1, 2017, and Plaintiff submitted a response.  AR 177-80.

On April 9, 2018, the ABCMR notified Plaintiff that the board had denied his application. AR 174. The ABCMR found the Army appropriately and equitably discharged Plaintiff in accordance with all applicable regulations, and fully protected his rights throughout the process. AR 174. The ABCMR denied relief essentially on the same grounds as the ADRB: there was no evidence that Plaintiff was affected by a mental health disorder or treated for one and, specifically, there was no evidence showing he suffered from or was treated for PTSD, PTSD-like symptoms, or any other mental or behavioral health conditions during his term of service.[8] AR 160.

In August 2018, Plaintiff requested that the ABCMR reconsider his previous request for correction of his military records due to "newly discovered evidence that was not available." AR 146. Plaintiff referenced his VA medical examination report, which he claimed established that he suffered from PTSD and anti-social personality disorder and that those disorders were present at the time of his enlistment. *Id.* In March 2020, after reviewing Plaintiff's request and all supporting documents, "to include the DoD guidance on liberal consideration when reviewing discharge upgrade requests," the ABCMR unanimously determined there was insufficient evidence of an error or injustice and that relief was not warranted. AR 136.

### C. VA medical examination

In July 2018, Plaintiff underwent a VA medical examination. AR 144. The VA examiner diagnosed Plaintiff with antisocial personality disorder and unspecified anxiety disorder. *Id.* The examiner concluded, "it was less likely than not any psychiatric disorder began during service, was caused by service, or was permanently aggravated by military service." *Id.* Rather, the VA physician determined his disorder "is primarily influenced by situational stressors at present that are independent of his active-duty term and related to current stressors of his release from incarceration, daughter's living situation, and establishing his life upon discharge." *Id.* The VA determined that Plaintiff suffered physical and emotional abuse as a child, he was ultimately abandoned and put into the foster care system, and he had documented psychiatric treatment and diagnoses that pre-dated his military service. AR 143. Ultimately, the VA denied service connection for an acquired psychiatric disorder and determined that Plaintiff was not entitled to a nonservice connected pension. AR 144-45.

---

[8] The ABCMR noted Plaintiff was not subjected to traumatic events during his military service. AR 175. The ABCMR also noted the absence of the following in Mr. Plaintiff's records: (1) issuance of a permanent physical profile rating; (2) evidence of a medical condition, physical or mental, that affected his ability to perform the duties required by his military occupational specialty and/or grade or rendered him unfit for military service; (3) diagnosis of a medical condition that warranted his entry into the Army Physical Disability Evaluation System, or (4) diagnosis of a condition that failed retention standards and/or was unfitting. AR 160.

### D.  Plaintiff's Complaint before this Court

On January 20, 2023, Plaintiff filed a Complaint before this Court alleging that the Army improperly discharged him in 2003 by giving him a discharge document which he did not sign.  Further Plaintiff argues that the Army erred by denying him medical disability, a discharge upgrade, retroactive promotion, and transition benefits. *See generally* Compl.

## II.     Standard of Review

### A.  Standard of Review for a Motion to Dismiss Pursuant to RCFC 12(b)(1)

When deciding a motion to dismiss pursuant to RCFC 12(b)(l), the Court "assume[s] all factual allegations [in the complaint] to be true and . . . draw[s] all reasonable inferences in plaintiff's favor." *Henke v. United States*, 60 F.3d 795, 797 (Fed. Cir. 1995) (citations omitted).  On a motion to dismiss for lack of subject-matter jurisdiction, "the plaintiff bears the burden to show by a preponderance of the evidence that the district court has subject matter jurisdiction." *Toxgon Corp. v. BNFL, Inc.*, 312 F.3d 1379, 1383 (Fed. Cir. 2002).  If a defendant challenges this Court's jurisdiction, the plaintiff cannot rely merely upon allegations in the complaint, but must instead bring forth relevant, competent proof to establish jurisdiction. *McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936).

Pleadings of a *pro se* plaintiff are held to a less stringent standard than those of litigants represented by counsel. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980).  A *pro se* plaintiff, however, is not excused or exempt from meeting the Court's jurisdictional requirements. *See Henke*, 60 F.3d at 799.

### B.  Standard of Review for a Motion to Dismiss Pursuant to RCFC 12(b)(6)

Where a Court concludes that the plaintiff has identified a money-mandating claim but cannot establish facts necessary to obtain relief, the matter should be dismissed pursuant to RCFC 12(b)(6). *See Murphy v. United States*, 993 F.2d 871, 872-73 (Fed. Cir. 1993).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A plaintiff's obligation to provide the grounds of his entitlement to relief "requires more than [mere] labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." *Twombly*, 550 U.S. at 555.  The alleged facts must state a claim that is "plausible," and not merely "conceivable." *Id.* at 570.

The Federal Circuit has held that "pleadings made by *pro se* litigants are 'held to less stringent standards than formal pleadings drafted by lawyers.'" *Arunachalam v. Apple, Inc.*, 806 Fed. Appx. 977, 981 (Fed. Cir. 2020) (quoting *Erickson v. Pardus*, 551

U.S. 89, 94 (2007)). A plaintiff's obligation, however, "to provide the "grounds" of [his] "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (quoting *Erickson*, 551 U.S. at 94).

III.     **Discussion**

A.  **Plaintiff's Claims challenging his 2003 discharge and related grievances are time-barred.**

Plaintiff alleges the Army improperly discharged him in 2003 by giving him a discharge document which he did not sign.[9] Plaintiff argues that to correct the improper discharge document, the Army should correct his military records, retroactively promote him and provide associated backpay.

The Government asserts that the Court must dismiss Plaintiff's claims challenging his discharge from the Army, because these claims are plainly barred by the six-year statute of limitations set forth in 28 U.S.C. § 2501. This Court agrees. To fall within the Court's jurisdiction, claims against the United States must be "filed within six years after such claim first accrues." 28 U.S.C. § 2501; *see John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 133-35 (2008) (explaining that Court of Federal Claims statute of limitations is jurisdictional); *FloorPro, Inc. v. United States*, 680 F.3d 1377, 1380-81 (Fed. Cir. 2012) (same). Under a statute of limitations, a claim first accrues "when all the events have occurred which fix the liability of the Government and entitle the claimant to institute an action." *Brown Park Estates-Fairfield Dev. Co. v. United States*, 127 F.3d 1449, 1455 (Fed. Cir. 1997) (quoting *Kinsey v. United States*, 852 F.2d 556, 557 (Fed. Cir. 1988)).

In a military discharge case pursuant to 37 U.S.C. § 204, the Federal Circuit has "long held that the plaintiff's cause of action for back pay accrues at the time of the plaintiff's discharge." *Martinez v. United States*, 333 F.3d 1295, 1303 (Fed. Cir. 2003) (*en banc*), *cert. denied*, 540 U.S. 1777 (2004). If a claimant fails to "file suit within the six-year limitation period prescribed in 28 U.S.C. § 2501, the plaintiff loses all rights to sue for the loss of pay stemming from the challenged discharge." *Id.* at 1304.

_____

[9] Individuals who are retired, discharged, or released from active duty will be furnished a record of their military service on DD Form 214. Army Reg. 635-200, (Personnel Separations Enlisted Personnel), ¶ 14-12*b* (2000) ¶ 3-3 (2000). Army Reg. 635-5, (Separation Documents) (2000) prescribes policies and procedures regarding the preparation of separation documents to include the DD Form 214. Notably, regulatory guidance permits the completion of a DD Form 214 with the statement "SOLDIER NOT AVAILABLE TO SIGN" when the soldier is not available, discharged in absentia, or physically unavailable to sign. Army Reg. 635-5¶ 2-4h(21) (Separation Documents) (2000).

Here, Plaintiff's claims for relief of back pay, retroactive assignment of rank, discharge upgrade, and correction of his military records all relate to his 2003 discharge and are therefore time-barred. *See Rana v. United States*, 664 Fed. Appx. 943, 947 (Fed. Cir. 2016) ("A discharge claim seeking back pay 'accrues at the time of the plaintiff's discharge.'" (quoting *Martinez*, 333 F.3d at 1304)); *Sabree v. United States*, 90 Fed. Cl. 683, 694 ("challenges to the terms of his discharge, including those claims relating to his discharge rank, corrections to his military record, and back pay benefits, are time-barred.").

Recent events do not change this result. Notwithstanding Plaintiff's application for ABCMR relief, which reopened his case and resulted in the issuance of its most recent 2021 decision, and that the ADRB reopened his case and issued its most recent 2023 decision are unavailing. The Federal Circuit elucidates that the "Tucker Act does not require exhaustion of administrative remedies, a plaintiff's invocation of such a permissive remedy neither prevents the accrual of his cause of action nor tolls the statute of limitations." *Chambers v. United States*, 417 F.3d 1218, 1224 (Fed. Cir. 2005).

Similarly, even if Plaintiff is arguing that he learned new information within the last six years that strengthened his claim or made him aware that he "had a claim, this does not rescue his claim from the statute of limitations. The Federal Circuit made clear in *Martinez* that the statute of limitations set forth in section 2501 is "not tolled by resort to optional administrative remedies, such as an appeal to a military records correction board." *Martinez*, 333 F.3d at 1315. The Court in *Martinez* also rejected the appellant's argument that the accrual of his claim was suspended because he was not aware he had a claim at the time of discharge. *Id.* at 1319. The Court explained that, to establish "accrual suspension," a plaintiff "must either show that the defendant has concealed its acts with the result that plaintiff was unaware of their existence, or it must show that its injury was 'inherently unknowable' at the accrual date." *Id.*

In this case, Plaintiff does not allege nor show that the Government concealed any acts of which he was unaware at the time of discharge making his discharge unlawful. Nor does he allege that the wrongfulness of his discharge was "inherently unknowable" at the time of discharge. *Id.* Rather, Plaintiff's allegations regarding the wrongfulness of his discharge concern factual circumstances of which he was fully aware at the time of discharge. Therefore, there is no basis for accrual suspension, and thus Plaintiff's challenges to his discharge are time-barred.

### B. Plaintiff's claim for legal assistance and transition benefits for his family is dismissed for failure to identify a money-mandating statute.

Plaintiff's Complaint alleges that he "was left stranded abroad and had to get assistance from a foreign government to repatriate back to the United States . . . [and he had to leave] behind 2 Children abroad (one of his children was wrongfully deported to Africa and has been stranded there for 20 years. *See* exhibit D)." Compl. 2. Thus, Plaintiff asks the Court to provide his family legal assistance and transition benefits upon

10

his discharge.  In its Motion to Dismiss, the Government correctly argues that this claim should be dismissed pursuant to RCFC 12(b)(1) for lack of jurisdiction.

Plaintiff's Complaint fails to identify a money-mandating statute to demonstrate that this Court possesses jurisdiction to entertain his claim for legal assistance and transition benefits for his family.  *James v. Caldera*, 159 F.3d 573, 581 (Fed. Cir. 1998); Compl. at 5.  Plaintiff appears to link his discharge to being "stranded abroad" and to his daughter's deportation by German authorities from Germany to Africa.  *Id.*  Plaintiff fails to explain, however, what he means by "legal assistance" and "transition benefits" or how the Army's actions left him stranded in Germany and led to the deportation of his daughter.  Compl. at 2, 5.

Although Plaintiff's Complaint generally cites to the Military Pay Act, Plaintiff's Complaint does not state how this statute is related to his claim for legal assistance and transition benefits.  Compl. at 2.  The Federal Circuit has held that this Court "cannot grant equitable relief unless such relief is 'an incident of and collateral to' a money judgment."  *Malcolm v. United States*, 690 Fed. Appx. 687, 689 (quoting 28 U.S.C. § 1491(a)(2)); *see James v. Caldera*, 159 F.3d 573, 580 (Fed. Cir. 1998) (holding that "incident of and collateral to" means that non-monetary relief must be "tied and subordinate to a money judgment" (quoting 28 U.S.C. § 1491(a)(2) (1994))).

It is unclear which statute Plaintiff intends to invoke.  If Plaintiff intends to refer to the Army's Transition Assistance Program under 10 U.S.C. § 1144, this statute is not money-mandating and, therefore, the Court does not possess jurisdiction.  Although 10 U.S.C. § 1059 provides transitional compensation for abused dependents, this statute does not appear to be applicable to Plaintiff's claims and he does not allege that it is applicable.  Further, 10 U.S.C. § 1044 provides legal assistance in connection with "personal civil legal affairs," but this statute is not money-mandating and appears to have no applicability to the circumstances in this case.  Because Plaintiff has not pled a claim over which the Court of Federal Claims has jurisdiction to grant monetary relief, the Court dismisses Plaintiff's claim for legal assistance and transition benefits for his family.

### C.  Plaintiff's remaining claim for disability retirement is dismissed for failure to state a claim.

The Government also asserts that Plaintiff's remaining claim for disability retirement should be dismissed pursuant to RCFC Rule 12(b)(6) because Plaintiff fails to allege facts asserting a plausible claim.  This Court agrees.

Plaintiff's Complaint asks the Court for an award of disability retirement "based on ptsd and inservice [sic] injuries."  Compl. at 5.  Although it is unclear from his Complaint, it appears that Plaintiff attempts to allege an unlawful denial of disability retirement benefits.  *See Pope v. United States*, 15 Cl. Ct. 218, 221 (1988) ("It is undisputed that this court has the jurisdiction to review discretionary actions of military departments concerning denial of disability retired pay, discharge of Army officers on

active duty, determinations of whether a person is fit for duty, and correction of military records."). Thus, to assert a plausible claim the complaint must set forth sufficient factual allegations, which if established, would demonstrate that the ABCMR and ADRB proceedings were "arbitrary, capricious, contrary to law, or unsupported by substantial evidence." *Cole v. United States*, 52 Fed. Cl. 429, 431 (2002) (dismissing the complaint for failure to state a claim, in a case concerning an appeal from a PEB determination to the Army Board for the Correction of Military Records where no evidence was provided that the Board's findings were unsupported by substantial evidence); *see also Bernard v. United States*, 59 Fed. Cl. 497, 503 (2004) (dismissing plaintiff's unlawful denial of disability claims for failure to state a claim because plaintiff's complaint failed to assert that agency proceedings were arbitrary and capricious.).

Plaintiff's records have undergone several ADRB and ABMCR reviews.  ADRB reviewed his claims three times, and on each occasion the board considered his supporting documentation and his existing military records. AR 4, 237, 420-22. Additionally, the ABCMR twice extensively reviewed Plaintiff's records, as well as a medical advisory opinion, which was based on a complete review of Plaintiff's medical records. AR 174, 136. The ABCMR and ADRB both concluded Plaintiff was fit for duty at the time of his discharge.  Further, the review boards found that no support existed for the notion that referral to a Medical Evaluation Board, the first step towards establishing entitlement to medical retirement,[10] was indicated at any time during Plaintiff's service. AR 11, 135, 182.

Though Plaintiff's Complaint refers to the ABCMR and ADRB proceedings, Plaintiff does not allege that the decisions of the military review boards were irrational or unsupported by substantial evidence.  Moreover, Plaintiff does not articulate any procedural defects or failure on the part of the Army to follow its own regulations or procedures during his separation.[11]  Although Plaintiff is held to a less stringent standard

---

[10] The Army utilizes the Physical Disability Evaluation System ("DES") to evaluate the nature and extent of disabilities affecting service members. *See* Army Reg. 635-40, (Evaluation for Retention, Retirement, or Separation), ¶ 1-1 (1990).  If a soldier is referred into the DES process, the Army first convenes a MEB to determine whether a soldier's medical condition meets medical retention standards of Army Reg. 40-501 ¶ 3-1a.

[11] Plaintiff only alleges that the Army made an error in connection with his discharge, asserting that his discharge is legally invalid because the Army improperly documented his DD Form 214 with "SOLDIER UNAVAILABLE FOR SIGNATURE." Compl. at 2-3.  He has claimed that he was never provided the opportunity to sign the form. AR 4, 9.  The ABCMR and ADRB, however, determined that the annotation was appropriate and otherwise found that there was insufficient evidence of an error or injustice warranting a change to Plaintiff's characterization of service.  AR 10-11, 132-38, 174-78, 236-41, 301-09.  This allegation is not applicable to his claim for military retirement as this alleged error concerns his discharge.

because of his *pro se* status, he is not exempt from meeting the Court's jurisdictional requirements. *See Henke*, 60 F.3d at 799.

To initiate a medical retirement, Plaintiff must have been subject to a disabling condition or injury that manifested itself during his period of service. *See* 10 U.S.C. § 1201(a). [12] Plaintiff presents no evidence, and the record does not otherwise reflect, that he had a disabling condition or injury that manifested itself during his period of service. Plaintiff fails to demonstrate that he has ever been diagnosed with PTSD while in service. He admits that the Army did not provide medical treatment for any disabling mental health condition during his service. AR 246. The VA medical examination report reflecting a July 2018 diagnosis for antisocial personality disorder and unspecified anxiety disorder indicated that the disorders were likely present since childhood. AR 144. As a result, the medical examiner opined that those conditions probably did not begin during service, were not caused by service, nor permanently aggravated by military service. *Id.* As Plaintiff admits in his Complaint, "the[se] conditions [were] not known to the petitioner or the government at the time" of his military service. Compl. at 2. Further, Plaintiff admits that the anti-social personality disorder predates his military service. *Id.* ("That was pre-existing military[.]").

Plaintiff's Complaint does not attempt to contradict the findings of the ABCMR and ADRB. Plaintiff has presented no evidence, and the record is devoid of any evidence, that he suffered from a medical condition while on active duty that rendered him unfit to serve, let alone exhibited symptoms of a disabling condition that would render him unable to meet required medical standards. Nor does Plaintiff's Complaint state, or the record show, that was he unable to perform his military duties while on active duty due to a medical condition and thus should have been referred to a medical evaluation board. AR 135, 182. Plaintiff's Complaint therefore fails to make sufficient factual allegations, if accepted as true, would show that the ABCMR and ADRB proceedings were arbitrary. Plaintiff fails to state a claim to relief that is plausible on its

---

[12] Pursuant to 10 U.S.C. § 1201(a), active-duty service members may be retired with pay "[u]pon a determination by the Secretary concerned that a member . . . is unfit to perform the duties of the member's office, grade, rank, or rating because of physical disability incurred while entitled to basic pay or while absent. . . ." Army Regulation (Army Reg.) 40-501 (Standards of Medical Fitness). Further, Army Reg. 40-501 (Standards of Medical Fitness) ¶3-3*c* (2002) states:

> Soldiers with specific enumerated conditions who do not meet the required medical standards will be evaluated by a medical evaluation board with the following caveats: A soldier will not be referred to a medical evaluation board (MEB) or physical evaluation board (PEB) because of impairments that were known to exist at the time of acceptance in the Army and that have remained essentially the same in degree of severity and have not interfered with successful performance of duty.

face, and thus the Court dismisses Plaintiff's claim for disability retirement. *See Twombly*, 550 U.S. at 570.

### IV.     Conclusion

For the above reasons, this Court **GRANTS** the Government's Motion to Dismiss and **DENIES** Plaintiff's Cross Motion**.**  The Clerk is directed to enter judgment accordingly.

**IT IS SO ORDERED.**

s/ Edward J. Damich
EDWARD J. DAMICH
Senior Judge

14